# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
Filed: August 5, 2020

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * | | |
| LORI SCHOONOVER, | * | PUBLISHED |
| | * | |
| Petitioner, | * | No. 16-1324V |
| | * | |
| v. | * | Special Master Nora Beth Dorsey |
| | * | |
| SECRETARY OF HEALTH | * | Ruling Awarding Damages; |
| AND HUMAN SERVICES, | * | Influenza ("Flu") Vaccine; Shoulder |
| | * | Injury Related to Vaccine |
| Respondent. | * | Administration ("SIRVA"). |
| | * | |
| * * * * * * * * * * * * * * * | | |

Amy A. Senerth, Muller Brazil, LLP, Dresher, PA, for petitioner.
Jennifer L. Reynaud, U.S. Department of Justice, Washington, DC, for respondent.

### **RULING AWARDING DAMAGES**[1]

On October 12, 2016, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, et seq.,[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury caused by an influenza ("flu") vaccination administered on October 16, 2013. Petition at Preamble. A Ruling on Entitlement issued on January 30, 2019, finding the petitioner was entitled to compensation for her shoulder injury related to vaccine administration ("SIRVA"). Ruling on Entitlement dated Jan. 30, 2019

---

[1] Because this Ruling contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this Ruling on the website of the United States Court of Federal Claims, in accordance with the E- Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the Internet.** As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

1

(ECF No. 59). The purpose of this Ruling is to adjudicate an appropriate award for pain and suffering damages.[3] For the reasons discussed below, the undersigned finds that petitioner is awarded $200,000.00 for actual pain and suffering and $1,200.00 per year, for petitioner's remaining life expectancy, for future pain and suffering.[4]

## I.     BACKGROUND

Petitioner's relevant medical history was set forth in the Ruling on Entitlement and Petitioner's Damages Memorandum and will not be repeated here. See Ruling on Entitlement dated Jan. 30, 2019 (ECF No. 59); Petitioner's Damages Memorandum ("Pet. Memo."), filed Feb. 27, 2020 (ECF No. 81). After the Ruling on Entitlement was issued, petitioner filed documents to support a claim for lost wages, including tax returns. Petitioner's Exhibit ("Pet. Ex.") 17. Ultimately, petitioner withdrew her claim for lost wages. See Respondent's Status Report ("Resp. Status Rept."), filed Apr. 27, 2020 (ECF No. 87). Petitioner filed affidavits from herself and her husband to support her claim for pain and suffering. Pet. Exs. 20-21.[5]

Notably, petitioner is licensed respiratory therapist. Pet. Ex. 20 at ¶ 3. She works in labor and delivery, assisting with the care of infants pre- and post-delivery. Id. Due to her shoulder injury, her work has been affected. Id. at ¶ 6. Additionally, petitioner is no longer able to pursue her dream job of being a transport respiratory therapist, due to difficulties reaching, moving a baby, performing bag ventilation and chest compressions, and providing tracheostomy care. Id. at ¶¶ 30-31. Petitioner's family life has also been impacted by her injury. See id. at ¶¶ 35-37. She is unable to actively participate in all the activities she use to enjoy with her two sons, and has been forced to become a spectator due to her arm pain. Id. at ¶ 37.

## II.    PARTIES' POSITIONS

Petitioner requests an award of $235,000.00 for actual pain and suffering and $1,500.00 per year for her life expectancy, reduced to the present net value, for future pain and suffering. Pet. Memo. at 1. She seeks this amount of compensation based on the severity of her left shoulder injury, which required two shoulder surgeries, multiple steroid injections, numerous

---

[3] In her memorandum, petitioner requested $9,737.97 for past lost wages. Petitioner's Damages Memorandum ("Pet. Memo."), filed Feb. 27, 2020, at 1 (ECF No. 81). She has since withdrawn that request, and no longer seeks lost wages. See Respondent's Status Report ("Resp. Status Rept."), filed Apr. 27, 2020 (ECF No. 87). Petitioner is not seeking unreimbursed expenses. See Pet. Status Rept., filed Mar. 31, 2020 (ECF No. 83).

[4] Based on petitioner's birth date of September 15, 1968, petitioner is expected to live for approximately 33 years. See Elizabeth Arias & Jiaquan Xu, Ctrs. for Disease Control & Prevention, Nat'l Ctr. for Health Stat., United States Life Tables, 2017, 68 Nat'l Vital Stat. Reps. 1, 3 tbl.A (2019).

[5] Petitioner and her husband's affidavits were originally filed as Petitioner's Exhibits 15 and 16, but these were not notarized. Notarized affidavits were refiled as Petitioner's Exhibits 20 and 21.

physical therapy visits over the course of several years, and narcotic analgesics for two years.  Id. In support of her request for an award for future pain and suffering, petitioner cites Hooper v. Secretary of Health & Human Services, No. 17-12V, 2019 WL 1561519 (Fed. Cl. Spec. Mstr. Mar. 20, 2019).  Id. at 11.  Mr. Hooper was awarded $1,500.00 per year for his life expectancy after he sustained a 50% partial shoulder disability.  Hooper, 2019 WL 1561519, at *9-10.

Respondent proposes an award of $165,000.00 for pain and suffering.  Resp. Damages Memo. ("Resp. Memo."), filed June 16, 2020, at 1 (ECF No. 89).  "Respondent does not dispute that petitioner's course during the two years following her vaccination was more severe than many shoulder injury cases," but argues that there was a gap in treatment for about one year, from October 2015 to October 2016, which "suggests that her shoulder pain during this timeframe was . . . less severe than it was in October 2015."  Id. at 10-11.  Further, respondent argues that beginning in 2017, petitioner developed chronic back and leg pain, and that her current limitations are due to that condition and not her SIRVA.  Id. at 11.  Citing Collado v. Secretary of Health & Human Services, No. 17-0225V, 2018 WL 3433352, at *6-8 (Fed. Cl. Spec. Mstr. June 6, 2018), respondent notes that future pain and suffering damages were not awarded where alleged ongoing symptoms were not supported by medical records.  Id.  Although respondent agrees that petitioner here had a similar clinical course to the petitioner in Hooper, medical records filed from 2015 to 2018 do not document any ongoing shoulder complaints, and thus, an award for future pain and suffering is not appropriate.  Id. at 12.

## III. DISCUSSION

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000."  § 15(a)(4).  Petitioner bears the burden of proof with respect to each element of compensation requested.  Brewer v. Sec'y of Health & Hum. Servs., No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no formula for assigning a monetary value to a person's pain and suffering and emotional distress.  I.D. v. Sec'y of Health & Hum. Servs., No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula."); Stansfield v. Sec'y of Health & Hum. Servs., No. 93-172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("[T]he assessment of pain and suffering is inherently a subjective evaluation.").  Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[6]  I.D., 2013 WL 2448125, at *9 (quoting McAllister v. Sec'y of Health & Hum. Servs., No. 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), vacated and remanded on other grounds, 70 F.3d 1240 (Fed. Cir. 1995).  Further, "when an amount is awarded for 'projected'—*i.e., future*—'pain and

---

[6] In this case, awareness of the injury is not in dispute.  The record reflects that at all relevant times petitioner was a competent adult with no impairments that would impact her awareness of her injury.  Therefore, the undersigned's analysis will focus principally on the severity and duration of petitioner's injury.

suffering,' such amount must be adjusted to its 'net present value.'" Childers ex rel. Overheu v. Sec'y of Health & Hum. Servs., No. 96-194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing Youngblood v. Sec'y of Health & Hum. Servs., 32 F.3d 552 (Fed. Cir. 1994)).

The undersigned may look to prior pain and suffering awards to aid in her resolution of the appropriate amount of compensation for pain and suffering. See, e.g., Doe 34 v. Sec'y of Health & Hum. Servs., 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case"). And, of course, the undersigned also may rely on her own experience adjudicating similar claims.[7] Hodges v. Sec'y of Health & Hum. Servs., 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. Graves v. Sec'y of Health & Hum. Servs., 109 Fed. Cl. 579 (2013). Instead, it is assessed by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. Id. at 595.

In that regard, the undersigned notes that over the past six years, the Special Processing Unit ("SPU") has amassed a significant history regarding damages in SIRVA cases. In Vinocur v. Secretary of Health & Human Services, the undersigned explained that after five-and-one-half years of SPU, 1,405 SIRVA cases were resolved informally as of January 1, 2020. No. 17-598V, 2020 WL 1161173, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2020). The undersigned noted that the median award for cases resolved via government proffer was $95,000.00 and the median award for cases resolved via stipulation was $70,000.00.[8] Id. "[T]o the extent prior informal resolutions are to be considered, the undersigned finds that the overall history of informal resolution in SPU provides a more valuable context for assessing the damages in this case." Kim

---

[7] From July 2014 until September 2015, the Special Processing Unit ("SPU") was overseen by former Chief Special Master Vowell. From October 2015 until October 2019, SPU cases, which included the majority of SIRVA claims, were on the undersigned's docket. The undersigned continues to review decisions issued in SPU cases, and remains familiar with the amounts awarded to petitioners in SIRVA cases in SPU.

[8] The undersigned further stressed that the "typical" range of SIRVA awards—i.e. the middle quartiles—is $75,044.86 to $122,038.99 for proffered cases and $50,000.00 to $92,500.00 for stipulated cases. Vinocur, 2020 WL 1161173, at *9. The total range for all informally resolved SIRVA claims—by proffer or stipulation—spans from $25,000.00 to $1,845,047.00. Id. at *9 n.13. Importantly, these amounts represent total compensation and typically do not separately list amounts intended to compensate for lost wages or expenses. The undersigned notes that these figures represent five-and-one-half years' worth of *past* informal resolution of SIRVA claims and represent the bulk of prior SIRVA experience in the Vaccine Program. However, these figures are subject to change as additional cases resolve and do not dictate the result in this or any future case. Nor do they dictate the amount of any future proffer or settlement.

4

v. Sec'y of Health & Hum. Servs., No. 17-418V, 2018 WL 3991022, at *9 (Fed. Cl. Spec. Mstr. July 20, 2018). The history of informal resolution in SPU "reflects a substantial history of resolutions among many different cases with many different counsel," and thus, "the undersigned is persuaded that the full SPU history of settlement and proffer conveys a better sense of the overall arms-length evaluation of the monetary value of pain and suffering in a typical SIRVA case." Id.

Additionally, after the inception of SPU in July 2014, there were several reasoned decisions by the undersigned awarding damages in SIRVA cases where the parties were unable to informally resolve damages.[9] Typically, the primary point of dispute was the appropriate amount of compensation for pain and suffering.

---

[9] See Desrosiers v. Sec'y of Health & Hum. Servs., No. 16-224V, 2017 WL 5507804 (Fed. Cl. Spec. Mstr. Sept. 19, 2017); Dhanoa v. Sec'y of Health & Hum. Servs., No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018); Marino v. Sec'y of Health & Hum. Servs., No. 16-622V, 2018 WL 2224736 (Fed. Cl. Spec. Mstr. Mar. 26, 2018); Collado, 2018 WL 3433352; Knauss v. Sec'y of Health & Hum. Servs., No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018); Kim, 2018 WL 3991022; Dobbins v. Sec'y of Health & Hum. Servs., No. 16-854V, 2018 WL 4611267 (Fed. Cl. Spec. Mstr. Aug. 15, 2018); Dirksen v. Sec'y of Health & Hum. Servs., No. 16-1461V, 2018 WL 6293201 (Fed. Cl. Spec. Mstr. Oct. 18, 2018); Cooper v. Sec'y of Health & Hum. Servs., No. 16-1387V, 2018 WL 6288181 (Fed. Cl. Nov. 7, 2018); Knudson v. Sec'y of Health & Hum. Servs., No. 17-1004V, 2018 WL 6293381 (Fed. Cl. Spec. Mstr. Nov. 7, 2018); Reed v. Sec'y of Health & Hum. Servs., No. 16-1670V, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019); Attig v. Sec'y of Health & Hum. Servs., No. 17-1029V, 2019 WL 1749405 (Fed. Cl. Spec. Mstr. Feb. 19, 2019); Binette v. Sec'y of Health & Hum. Servs., No. 16-0731V, 2019 WL 1552620 (Fed. Cl. Spec. Mstr. Mar. 20, 2019); Hooper, 2019 WL 1561519; Garrett v. Sec'y of Health & Hum. Servs., No. 18-0490V, 2019 WL 2462953 (Fed. Cl. Spec. Mstr. Apr. 8, 2019); Weber v. Sec'y of Health & Hum. Servs., No. 17-0399V, 2019 WL 2521540 (Fed. Cl. Spec. Mstr. Apr. 9, 2019); Bordelon v. Sec'y of Health & Hum. Servs., No. 17-1892V, 2019 WL 2385896 (Fed. Cl. Spec. Mstr. Apr. 24, 2019); Pruett v. Sec'y of Health & Hum. Servs., No. 17-0561V, 2019 WL 3297083 (Fed. Cl. Spec. Mstr. Apr. 30, 2019); Bruegging v. Sec'y of Health & Hum. Servs., No. 17-0261V, 2019 WL 2620957 (Fed. Cl. Spec. Mstr. May 13, 2019); Wallace v. Sec'y of Health & Hum. Servs., No. 16-1472V, 2019 WL 4458393 (Fed. Cl. Spec. Mstr. June 27, 2019); Schandel v. Sec'y of Health & Hum. Servs., No. 16-0225V, 2019 WL 5260368 (Fed. Cl. Spec. Mstr. July 8, 2019); Capasso v. Sec'y of Health & Hum. Servs., No. 17-0014V, 2019 WL 5290524 (Fed. Cl. Spec. Mstr. July 10, 2019); Kelley v. Sec'y of Health & Hum. Servs., No. 17-2054V, 2019 WL 5555648 (Fed. Cl. Spec. Mstr. Aug. 2, 2019); Kent v. Sec'y of Health & Hum. Servs., No. 17-0073V, 2019 WL 5579493 (Fed. Cl. Spec. Mstr. Aug. 7, 2019); Lucarelli v. Sec'y of Health & Hum. Servs., No. 16-1721V, 2019 WL 5889235 (Fed. Cl. Spec. Mstr. Aug. 21, 2019); Goring v. Sec'y of Health & Hum. Servs., No. 16-1458V, 2019 WL 6049009 (Fed. Cl. Spec. Mstr. Aug. 23, 2019); Nute v. Sec'y of Health & Hum. Servs., No. 18-0140V, 2019 WL 6125008 (Fed. Cl. Spec. Mstr. Sept. 6, 2019).

### A.     Determining Petitioner's Award of Pain and Suffering in This Case

The undersigned is mindful of previous cases and those cited by the parties in their respective memoranda.  However, in determining an award in this case, the undersigned does not rely on a single decision or case.  Rather, the undersigned has reviewed the particular facts and circumstances in this case, giving due consideration to the circumstances and damages in other cases cited by the parties and other relevant cases, as well as her knowledge and experience adjudicating similar cases.  Upon the undersigned's review of the complete record and in consideration of the undersigned's experience evaluating SIRVA claims, the undersigned finds that an award of $200,000.00 for actual pain and suffering and $1,200.00 per year for her life expectancy, reduced to net present value, for future pain and suffering is appropriate.

#### 1.     Past Pain and Suffering

In the undersigned's experience, awareness of suffering is not typically a disputed issue in SIRVA cases.  In this case, neither party has raised, nor is the undersigned aware of, any issue concerning petitioner's awareness of suffering and the undersigned finds that this matter is not in dispute.  Thus, based on the circumstances of this case, the undersigned determines that petitioner had full awareness of her suffering.

The undersigned finds that petitioner experienced a severe SIRVA.  Petitioner first reported left shoulder pain about twenty days following her flu vaccination.  Thereafter, she reported constant pain.  She had pain at rest, and she often described pain with activity as severe, with a rating of eight out of ten.  Petitioner's pain did not improve following multiple steroid injections.  Petitioner's first surgery was an arthroscopic shoulder bursectomy with extensive subacromial debridement.  Postoperatively, she underwent physical therapy, participated in a home exercise program, and was prescribed pain medication.  However, she continued to have pain.

In July 2014, nine months after vaccination, petitioner had no relief of her pain.  She continued to rate her pain as severe, as a seven out of ten, and eight out of ten with activity.  She underwent additional steroid injections, but they did not relieve her pain or improve her range of motion.

Approximately one year after vaccination, petitioner sought a second opinion from Dr. Jeffrey Bradley.  At that time, she had moderate to severe, sharp left shoulder pain, and limited range of motion.  Dr. Bradley diagnosed petitioner with a "profound frozen shoulder."  Pet. Ex. 8 at 44.  MRI performed November 7, 2014 showed adhesive capsulitis, a small tear of the supraspinatus tendon, synovitis in the joint, and bursitis.

On December 4, 2014, petitioner underwent her second surgery, a left shoulder manipulation under general anesthesia, and arthroscopic debridement with capsular release and synovectomy.  Postoperatively, petitioner required the narcotic OxyContin, and later Dilaudid, for severe pain.  She reported pain ranging three to nine out of ten, depending on her use of medication.

In January 2015, petitioner continued to have pain, and Dr. Bradley explained that she was in the inflammatory phase of adhesive capsulitis. She continued physical therapy. Again, petitioner described constant pain that required narcotic pain medication. She lost range of motion, 10-20 degrees in all planes of motion. Petitioner returned to physical therapy, and attended 34 sessions. She continued to have constant shoulder pain, limited range of motion with certain activities, and weakness of her left arm.

Throughout 2015, petitioner had ongoing pain. She had depression from her injury. Dr. Bradley prescribed Lidoderm patches. Petitioner underwent another joint injection, but it did not relieve her pain.

On October 23, 2015, petitioner had an independent medical evaluation by Dr. James A. Stuckmeyer. Dr. Stuckmeyer concluded that "as a direct and proximate cause of her vaccination, petitioner had a "diagnosis of chronic inflammatory response, adhesive capsulitis with marked limitations in range of motion and significant pain, [and] . . . a 40% permanent partial disability to the left shoulder." Pet. Ex. 8 at 210. Dr. Stuckmeyer further noted that petitioner's prognosis was guarded.

Additionally, the undersigned has considered the extent to which petitioner's injury impacted her professional and personal life. Petitioner's affidavit details the affect her injury has had on her care of infants and adults as a respiratory therapist. She also credibly described her physical difficulties at home, with her family, and performing activities of daily living.

As described above, the undersigned finds that there is medical record evidence that petitioner suffered moderate to severe pain from the time of vaccination through the medical evaluation by Dr. Stuckmeyer in October 2015, a period of approximately two years. The undersigned acknowledges that during this time, petitioner underwent lengthy and significant medical and surgical care and treatment, and suffered episodes of severe pain and limited mobility.

To the undersigned's knowledge, this is the only SIRVA case in the Program where a petitioner underwent two shoulder surgeries on top of multiple steroid injections and numerous physical therapy sessions. In short, petitioner had a more complicated clinical course than that seen in other SIRVA cases. Because petitioner had multiple shoulder surgeries, extensive treatment, and severe pain for a protracted period of time, the undersigned finds a higher award for actual or past pain and suffering is warranted. Therefore, the undersigned finds that $200,000.00 represents an appropriate award for petitioner's actual or past pain and suffering.

### 2. Future Pain and Suffering

Petitioner maintains that she continues to suffer the effects of her injury. In her affidavit, she states that she has pain while performing her job as a respiratory therapist. She described pain during emergencies, reaching, moving patients, performing CPR, and performing other aspects of her job. She avers that she will not be able to pursue her dream job of being a transport respiratory therapist. She also describes how she is not able to perform activities that she formerly enjoyed with her sons.

7

An independent medical examination performed by Dr. Stuckmeyer provides evidence that petitioner has sustained a permanent injury as a result of her vaccination. Dr. Stuckmeyer opined that petitioner has a "40% permanent partial disability to [her] left shoulder." Pet. Ex. 8 at 210.

There are several reasoned SIRVA damages decisions where compensation for future pain and suffering have been awarded. See Dhanoa, 2018 WL 1221922; Curri v. Sec'y of Health & Hum. Servs., No. 17-432V, 2018 WL 6273562 (Fed. Cl. Spec. Mstr. Oct. 31, 2018); Hooper, 2019 WL 1561519. In Dhanoa, the special master awarded $10,000.00 for pain and suffering for the year immediately following the decision, but gave no award for subsequent years. Dhanoa, 2018 WL 1221922, at *7. In Curri, considering petitioner's significant arm pain, her permanently reduced range of motion, and the unique challenges petitioner faced in her day-to-day life, the special master found that $550.00 per year to be an appropriate award for petitioner's future pain and suffering. Curri, 2018 WL 6273562, at *6.

Here, petitioner's pain and suffering, disability, and prognosis is similar to that of the petitioner in Hooper. Hooper, 2019 WL 1561519. In Hooper, the petitioner filed medical records from his orthopedist noting that Mr. Hooper had lost approximately 50% of his left arm function and was unlikely to improve. Id. at *4. Dr. Stuckmeyer assessed Ms. Schoonover with a permanent partial rating of 40%, noted that her symptoms had plateaued, and her future prognosis was guarded. See Pet. Ex. 8 at 210. However, as respondent has noted, the sequelae of petitioner's left shoulder injury has not been well documented in her medical records since Dr. Stuckmeyer's examination in October 2015. While there is no evidence to suggest that Dr. Stuckmeyer's assessment of petitioner's shoulder disability has changed, the records do not document ongoing complaints so as to support the amount of future damages petitioner seeks.

Petitioner bears the burden of proof with respect to each element of compensation requested and the medical records are the most reliable evidence of petitioner's condition. Brewer, 1996 WL 147722, at *22-23; Shapiro v. Sec'y of Health & Hum. Servs., 101 Fed. Cl. 532, 537-38 (2011) ("There is little doubt that the decisional law in the vaccine area favors medical records created contemporaneously with the events they describe over subsequent recollections."). Based on the petitioner's medical records, and the evaluation and opinions of Dr. Stuckmeyer, the undersigned finds that an award of $1,200.00 per year for her life expectancy is an appropriate award for petitioner's future pain and suffering. This amount will be reduced to net present value.

## IV.   CONCLUSION

In determining an award in this case, the undersigned does not rely on a single decision or case. Rather, the undersigned has reviewed the particular facts and circumstances in this case, giving due consideration to the circumstances and damages in other cases cited by the parties and other relevant cases, as well as her knowledge and experience adjudicating similar cases. In light of all of the above, and in consideration of the record as a whole, the undersigned finds that petitioner should be awarded $200,000.00 in compensation for actual pain and suffering, and $1,200.00 per year for her life expectancy for future pain and suffering, reduced to net present

value.  Petitioner was born on September 15, 1968, and her remaining life expectancy is approximately 33 years.[10]  Thus, her future pain and suffering damages total approximately $39,600.00.

**The parties are to file a joint status report <u>no later than 30 days, on Friday, September 4, 2020</u>, converting the undersigned's award of future pain and suffering to its net present value.  If the parties are unable to agree on the amount of the net present value of the future award, the undersigned will use a one percent net discount rate for the first fifteen years, and a two percent net discount rate for the remaining years.[11]  Once the issue of net present value for the future award is resolved, a damages decision will issue.**

**IT IS SO ORDERED.**

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Special Master

---

[10] Petitioner's life expectancy was calculated using the tables compiled by the National Center for Health Statistics.  <u>See</u> Elizabeth Arias & Jiaquan Xu, Ctrs. for Disease Control & Prevention, Nat'l Ctr. for Health Stat., <u>United States Life Tables, 2017</u>, 68 Nat'l Vital Stat. Reps. 1, 3 tbl.A (2019).

[11] <u>See</u> <u>Dillenbeck v. Sec'y Health & Hum. Servs.</u>, No. 17-428V, 2019 WL 4072069, at *15 (Fed. Cl. Spec. Mstr. July 29, 2019) (applying a one percent net discount rate for the first fifteen years, followed by a two percent net discount rate for the remaining years), <u>aff'd in part</u>, 147 Fed. Cl. 131 (2020); <u>Curri</u>, 2018 WL 6273562, at *5 (same); <u>Petronelli v. Sec'y Health & Hum. Servs.</u>, No. 12-285V, 2016 WL 3252082, at *5-6 (Fed. Cl. Spec. Mstr. May 12, 2016) (analyzing the appropriateness of a one percent discount for future damages).